■ Eugene Coizza II et al., Respondents-Appellants, v 164-50 Crossbay Realty Corp. et al., Appellants-Respondents. [900 NYS2d 416]—

In an action, inter alia, for specific performance of a contract for the sale of real property, the defendants appeal, as limited by their brief, from so much of an order and judgment (one

paper) of the Supreme Court, Queens County (Taylor, J.), entered October 30, 2008, as granted that branch of the plaintiffs' motion which was for summary judgment on the cause of action for specific performance of the contract of sale and denied their cross motion for summary judgment dismissing the amended complaint, and the plaintiffs cross-appeal, as limited by their brief, from so much of the same order and judgment as denied that branch of their motion which was for summary judgment on so much of the amended complaint as sought to recover, as damages, among other things, an abatement of the purchase price and purchase-money mortgage in the sum of the costs incurred in obtaining a certificate of occupancy, and recoupment of their losses arising from the defendants' alterations, modifications, and changes to the property without their consent.

Ordered that the order and judgment is modified, on the law, by deleting the provision thereof denying that branch of the plaintiffs' motion which was for summary judgment on so much of the amended complaint as sought to recover, as damages, an abatement of the purchase price and purchase-money mortgage in the sum of the costs incurred in obtaining the certificate of occupancy, and recoupment of their losses arising from the defendants' alterations, modifications, and changes to the property without their consent, and substituting therefor a provision granting that branch of the plaintiffs' motion; as so modified, the order and judgment is affirmed insofar as appealed and cross-appealed from, with costs to the plaintiffs, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent herewith.

On August 9, 2002, the plaintiffs contracted to purchase a parcel of multi-purpose commercial real property (hereinafter the premises) from the defendant 164-50 Crossbay Realty Corp. (hereinafter the seller). The purchase price of $1,200,000 was to be financed by a purchase-money mortgage issued by the seller to the plaintiffs. The contract provided for a closing "on or about" January 15, 2003, and required the seller to deliver a certificate of occupancy and convey "insurable" or "marketable" title. At the same time that the plaintiffs contracted to purchase the property, they also leased a portion of it for use as a retail store. The seller agreed not to "extend, modify or alter" or in any way voluntarily affect the validity of any leases on the premises without the prior written consent of the plaintiffs.

The contract provided that if title failed to close "within thirty (30) days from January 15, 2003 . . . for any reason" other than the plaintiffs' willful default, the plaintiffs would be paid

the sum of $100,000 as "liquidated damages." The contract also stated that the seller's "sole remedy" for the plaintiffs' breach was the "sum of $5,000."

In mid-January 2003, the parties exchanged letters which evidenced the seller's continued efforts to obtain the certificate of occupancy and the plaintiffs' intent to continue the contract. On February 5, March 25, and June 3, 2003, respectively, the plaintiffs sent letters to the seller, inquiring into the status of its obtaining the certificate of occupancy, and conveying the plaintiffs' interest in closing as soon as possible. By letter dated October 8, 2003, the plaintiffs memorialized that the proposed closing in January 2003 had not occurred, acknowledged that the seller was having difficulty obtaining the certificate of occupancy, and explained that they were willing to take the property at a reduced price. The letter further requested that the seller cease its plans to allow a tenant to subdivide rental space, as such conduct violated the contract and would delay the obtaining of a certificate of occupancy. In a letter dated October 15, 2003, the seller's attorney acknowledged receipt of the October 8, 2003, letter and stated that he would forward it to his client. By letter dated May 25, 2004, the plaintiffs informed the seller that they were acting to obtain the certificate of occupancy by retaining an architect, filing plans, and scheduling an inspection of the premises by the New York City Department of Buildings (hereinafter the Building Department). By letter dated June 10, 2004, the plaintiffs informed the seller that the only thing the Building Department required to issue the certificate of occupancy was a recent survey, and the plaintiffs requested that the seller send the survey. By letter dated August 16, 2004, the plaintiffs informed the seller that they had obtained the survey and that the issuance of the certificate of occupancy was imminent. The plaintiffs asked the seller to contact them about a closing date.

In a letter dated November 1, 2004, the plaintiffs informed the seller that the closing would take place on November 29, 2004, at 1:00 P.M., at the office of the seller's attorney. The letter also stated that the plaintiffs were willing to extend the closing date to one more convenient to the seller.

By letter dated November 5, 2004, the seller informed the plaintiffs that it was experiencing "irreconcilable differences," that the delay in closing had cost it approximately $48,000 in lost rent, and, because of this, it was unable to fulfill its obligations under the contract. Accordingly, the seller opted to exercise its rights under the contract, "which provides that in the event title did not close for any reason," the seller was to pay the stipulated liquidated damages to the plaintiffs.

The plaintiffs commenced this action, inter alia, for specific performance of the contract of sale on the grounds that the seller refused to schedule a closing of title and that the seller's letter of November 5, 2004, constituted a repudiation of the contract. The plaintiffs sought consequential damages, an abatement of the purchase price and purchase-money mortgage in the sum of the costs incurred in obtaining the certificate of occupancy, damages for loss of a favorable mortgage interest rate, damages arising from the seller's alterations, modifications, and changes to the property without the plaintiffs' consent, and damages resulting from the plaintiffs' loss of profit because the seller rented the property to the plaintiffs' competitors. The seller answered, interposing, among others, the affirmative defense that the plaintiffs' causes of action were barred by documentary evidence. The plaintiffs moved for summary judgment, inter alia, on the cause of action for specific performance of the contract on the ground that they were ready, willing, and able to close title, having fully performed under the contract, and on the ground that the seller committed an anticipatory breach of the contract by repudiating the contract in its November 5, 2004, letter. The plaintiffs also moved for summary judgment on the cause of action seeking consequential damages. The seller cross-moved for summary judgment dismissing the amended complaint on the grounds that the contract was cancelled because the parties failed to close title within 30 days of January 15, 2003, as specified in the contract, that the condition precedent of obtaining the certificate of occupancy was not fulfilled, and that the plaintiffs' letter of November 1, 2004, failed to fix November 29, 2004, as the law date because the language was equivocal about that date. In the order appealed from, the Supreme Court granted that branch of the plaintiffs' motion which was for summary judgment on the cause of action for specific performance of the contract, and denied that branch of the plaintiffs' motion which was for summary judgment on the cause of action seeking consequential damages. We modify.

The Supreme Court properly granted that branch of the plaintiffs' motion which was for summary judgment on the cause of action for specific performance of the contract because the plaintiffs met their prima facie burden of showing that they were ready, willing, and able to perform it (*see Huntington Min. Holdings v Cottontail Plaza*, 60 NY2d 997, 998 [1983]). On this record, it is clear that the plaintiffs complied with their obligations, as set forth in the contract, by obtaining a title report and environmental survey and forming a limited liability company to take title. The seller attempted to raise an issue of

fact as to whether the plaintiffs were ready, willing, and able to perform the contract by contending that the contract terminated because the parties failed to close on January 15, 2003, as provided in the contract. This contention is without merit. The record discloses that the contract was extended after the January 15, 2003, closing date because both parties actively sought to continue the contract well beyond the closing date. "[I]f a contract expressly provides for modifications to be in writing, an oral modification will be enforced where it has been fully performed" (*J & R Landscaping v Damianos*, 1 AD3d 563, 564 [2003]). The seller also attempted to raise an issue of fact as to the seller's right to cancel the contract notwithstanding that the plaintiffs were ready, willing, and able to perform the contract, by asserting that the contract was voidable because the certificate of occupancy provision was not satisfied. This contention also is without merit. The record reveals that the contract's certificate of occupancy provision was inserted for the plaintiffs' sole benefit and, therefore, the plaintiffs properly could waive it as a condition precedent to closing, as they did in their letter of May 25, 2004 (*see Caira v Bell Bay Props.*, 143 AD2d 870 [1988]; *Laxrand Constr. Corp. v R.S.C.A. Realty Corp.*, 135 AD2d 685 [1987]). Accordingly, the seller had no right to cancel the contract based on its inability to obtain a certificate of occupancy. The plaintiffs waived the certificate of occupancy requirement for closing by their letter of May 25, 2004, wherein they informed the seller that they would assume the responsibility of obtaining the certificate of occupancy. The seller further attempted to raise an issue of fact as to whether it committed an anticipatory breach of the contract. On this record, it is clear, as the Supreme Court determined, that, by its letter dated November 5, 2004, the seller committed an anticipatory breach of the contract by improperly canceling the contract based upon "irreconcilable differences." The seller attempted to raise an issue of fact as to whether the plaintiffs were ready, willing, and able to perform the contract by contending that the plaintiffs' letter of November 1, 2004, was too equivocal to set November 29, 2004, as the law day. While the plaintiffs' letter of November 1, 2004, was too equivocal to set the law day (*see Knight v McClean*, 171 AD2d 648, 649-650 [1991]), because the seller committed an anticipatory breach of the contract, the plaintiffs did not need to attend the closing before commencing this action (*see Yitzhaki v Sztaberek*, 38 AD3d 535 [2007]). Accordingly, the seller failed to raise a triable issue of fact as to whether the plaintiffs were ready, willing, and able to perform the contract (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

The Supreme Court improperly denied that branch of the

plaintiffs' motion which was for summary judgment on so much of the amended complaint as sought to recover, as damages, an abatement of the purchase price and purchase-money mortgage in the sum of the costs incurred by them in obtaining the certificate of occupancy, and recoupment of their losses arising from the seller's alterations, modifications, and changes to the property without their consent. Inasmuch as these claims are consistent with the parties' contract and, therefore, implicate the plaintiffs' receipt of the benefit of the bargain, the matter must be remitted to the Supreme Court, Queens County, for a hearing on the issue of damages. At the hearing, the plaintiffs should be afforded an opportunity to present evidence of these claimed damages (see *Flowers v 73rd Townhouse, LLC*, 52 AD3d 104 [2008]). By their May 25, 2004, letter informing the seller that they would be taking action to obtain the certificate of occupancy, the plaintiffs waived only the requirement that the seller obtain the certificate as a condition precedent to closing. Thus, the plaintiffs are entitled to present evidence of the costs incurred in obtaining the certificate of occupancy at the hearing. The plaintiffs' claims for lost amortization and for lost profits do not implicate the real property contract (*id.*), and the plaintiffs made no separate claims for these damages.

Contrary to the seller's contention, the liquidated damages provision does not operate to preclude the plaintiffs from recouping the costs they incurred in obtaining the certificate of occupancy and their losses arising from the seller's alterations, modifications, and changes to the property without their consent. "The clause does not . . . specifically limit the amount of actual damages that the plaintiff[s] may recover upon [the seller's] abandonment of the contract" (*Town of N. Hempstead v Sea Crest Constr. Corp.*, 119 AD2d 744, 746 [1986]; see *Spectrum Painting Contrs., Inc. v Kreisler Borg Florman Gen. Constr. Co., Inc.*, 64 AD3d 565, 575-576 [2009]). Furthermore, the contingency provided by the liquidated damages provision was the failure to close within 30 days of the closing date. The closing date was indefinitely delayed, and the plaintiffs' attempt to establish a closing date was thwarted by the seller. Therefore, the liquidated damages provision does not apply: the contingency upon which it was based could not have occurred because no closing date was established. Rivera, J.P., Florio, Miller and Hall, JJ., concur.